Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Amy L. Stoklas Oakes, an individual,<br><br>Plaintiff<br><br>v.<br><br>NeoLight, LLC, an Arizona limited liability company; and TriNet HR III, Inc., a California for profit corporation,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Amy L. Stoklas Oakes, by undersigned counsel, for her Complaint against Defendants, NeoLight, LLC, an Arizona limited liability company, and TriNet HR III, Inc., a California for profit corporation, Inc., alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff against Defendants NeoLight, LLC ("NeoLight") and TriNet HR III, Inc. ("TriNet") (collectively "Defendants") for unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., violation of the Arizona Employment Protection Act, A.R.S. §23-1501, and violation of the Arizona paid sick leave laws (part of the Fair Wages and Healthy Families Act), A.R.S. §§ 23-364, 23-373 to 23-374. .

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a citizen of Arizona and the United States, who resides in Maricopa County, Arizona.

2. Defendant NeoLight, LLC is a limited liability company organized in the

State of Arizona, with its operation headquarters in Scottsdale, Arizona.

3. Defendant NeoLight, LLC's sole member-manager of the limited liability company is Karthi Vivek Kopparthi Naga Venkat, as of the Arizona Corporation Commission filing on May 30, 2023.

4. Upon information and belief, Karthi Vivek Kopparthi Naga Venkat, the sole member and manager of Defendant NeoLight, is a citizen of the United States and the State of Arizona.

5. Defendant TriNet HR III, Inc. is a for profit corporation organized in California and doing business in Arizona.

6. This Court has jurisdiction based upon federal question jurisdiction, under 28 U.S.C. § 1331.

7. This Court also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

8. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims in this action occurred in this District.

9. Plaintiff timely filed a charges of discrimination against each of the Defendants with the Equal Employment Opportunity Commission ("EEOC") and received the Notices of Right to Sue.

10. Plaintiff exhausted the administrative process and filed this action timely within ninety-days of Plaintiff's receipt of the EEOC's Notices of Right to Sue, dated April 30, 2024 and May 7, 2024.

**FACTUAL ALLEGATIONS**

11. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

12. Defendants were employers and joint employers at all relevant times.

13. Plaintiff was employed by Defendants, jointly.

14. Defendant NeoLight hired and supervised Plaintiff and identified it as Plaintiff's employer in documents provided to Plaintiff.

15. Defendant NeoLight determined Plaintiff's compensation and benefits,

including stock options in lieu of market salary.

16. Defendant NeoLight identified Plaintiff as its Vice President of Quality & Regulatory Affairs, who began work with NeoLight in 2016.

17. Defendant TriNet issued payroll and W-2 statements to Plaintiff which identified it as Plaintiff's employer.

18. Defendant NeoLight terminated Plaintiff on or about April 4, 2024, confirmed in a letter from Defendant TriNet, dated April 4, 2024.

19. Defendant NeoLight presented Plaintiff a proposed severance agreement on April 9, 2024, identifying itself as Plaintiff's employer.

20. Defendant NeoLight hired Plaintiff in 2016, first as a contractor and as an employee, in the position of the Vice President of Quality & Regulatory Affairs, beginning October 1, 2021.

21. Plaintiff worked closely with the Defendant NeoLight's member-manager and CEO Vivek Kopparthi during performance of her duties as a compliance officer.

22. Mr. Kopparthi directly supervised Plaintiff on the job.

23. During spring of 2023, Plaintiff worked on registration with the U.S. Food and Drug Administration for one of Defendant NeoLight's products.

24. Plaintiff reported to Mr. Kopparthi that statements in the company's promotional materials had to be removed unless there was documentation to support the claims, in order to comply with state and federal laws.

25. Mr. Kopparthi was annoyed and frustrated by Plaintiff's compliance directives, knowing full well that was her obligation as VP of Quality & Regulatory Affairs.

26. Following the spring 2023 compliance issues, Mr. Kopparthi's relationship towards Plaintiff became less cordial, he was more distant, and he excluded her from key meetings that she previously had attended.

27. The different treatment appeared retaliatory and adversely impacted the conditions of Plaintiff's employment by keeping her out of the loop on important matters.

3

28. In June 2023, Plaintiff was diagnosed with stage 3 triple negative breast cancer and reported that to her direct supervisor Mr. Kopparthi.

29. Mr. Kopparthi was empathetic and provided Plaintiff work accommodations that relieved her of traveling due to her ongoing medical treatments.

30. During August 2023, Defendant NeoLight hired two consultants as contractors to work in the regulatory affairs under Plaintiff's job duties, without involving Plaintiff in the decision or the hiring.

31. Plaintiff asked Mr. Kopparthi to share with her the scope of consultant's work, so she could manage the regulatory affairs under her obligations but he declined.

32. Plaintiff later saw one of the consultant's contracts and discovered that Defendant NeoLight had assigned the consultants to learn her job.

33. Plaintiff became distressed and concerned for her continuing employment.

34. On September 26, 2023, Plaintiff was unexpectedly hospitalized due to a bilateral pulmonary embolism which is a rare and very serious side-effect of the chemotherapy treatments for her breast cancer.

35. Plaintiff kept Defendants informed of her serious health impairment and following her release from the hospital, she took two weeks' medical leave, using earned sick leave.

36. Plaintiff's serious health impairment and side-effects constitute a disability, due to abnormal cell development, suppressed immune system, pulmonary complications, and fatigue, requiring continued monitoring and treatment.

37. Plaintiff informed Mr. Kopparthi that she had prepared the employees to have backup access to meet her on-the-job obligations.

38. Mr. Kopparthi criticized Plaintiff on her return to work for work that she could not have done during her medical leave.

39. Defendant NeoLight's CEO Mr. Kopparthi spoke with Plaintiff on October 18, 2023, during their regular weekly status conference and asked her to change her employment status to one as an independent contractor.

4

40. Mr. Kopparthi seriously criticized Plaintiff for having missed work and letting work fall "through the cracks" while she was on the two weeks' medical leave. He claimed these issues justified transitioning her to work as an independent contractor.

41. Plaintiff immediately rejected the proposal to transition to a contractor role and end her employment with Defendants, explaining she needed the employee benefits especially now while she continued chemotherapy treatment.

42. After their October 18, 2023 conference, Mr. Kopparthi emailed concerns about her performance when she was not even at work, and he expressed concerns about staffing during the upcoming three to six months, when Plaintiff continued treatment for her cancer impairment.

43. Defendants, by CEO Mr. Kopparthi, held Plaintiff responsible for matters that occurred and were out of her control while she was on medical leave, thereby rendering the leave ineffective and punishing or retaliating against her for taking leave.

44. Mr. Kopparthi threatened Plaintiff's employment might be terminated or she might be transitioned from employee status to an independent contractor because, he said, the company could not be left in "limbo."

45. Plaintiff had observed Defendants, by Mr. Kopparthi, demote and then push out another executive just a couple of months after he had been hospitalized in January 2023 and she was concerned she would be subject to the same discriminatory and retaliatory treatment.

46. After Mr. Kopparthi's criticisms and distress, Plaintiff applied for and was approved for short-term disability leave as an accommodation to treat her serious health impairment.

47. In November 2024, Plaintiff complained, via her attorney, to Defendants of disability discrimination and retaliation. Plaintiff also complained she had been subjected to retaliation for reports about the company's noncompliance with state and federal laws.

48. On March 7, 2024, Plaintiff communicated to Defendants her ability to return to work as of April 1, 2024, ending her short term disability leave.

5

49. Mr. Kopparthi responded and told Plaintiff to return to work on April 4, 2024, and he scheduled a conference call for that same day.

50. Plaintiff returned to work on April 4, 2024 and attended the conference at the designated time.

51. Mr. Kopparthi and Controller Mary Kaye Jansen were on the conference call and Mr. Kopparthi immediately terminated Plaintiff, on her first day back to work.

52. On the afternoon of April 4, 2024, Mary Kaye Jansen, Defendant NeoLight's Controller, emailed Plaintiff with the subject "TriNet Termination Information," and provided a termination letter from Defendant TriNet and other unemployment information.

53. The termination letter from Defendant TriNet refers to itself and Defendant NeoLight as employers of Plaintiff.

54. The termination letter had the subject line "TriNet Services Ending April 4, 2024." The letter stated:

> effective April 4, 2024, the relationship between you and TriNet has been terminated for one or more of the following reasons:
> - The service agreement between TriNet and your worksite employer, 2023 NeoLight, has been terminated.
> - You are no longer an employee of 2023 NeoLight.

55. The letter from Defendant TriNet identified no author, no address nor contact telephone number but referred to a login to the company online if there were any questions.

56. Defendants emailed Plaintiff, on April 9, 2024, a proposed settlement agreement to waive all legal claims against Defendant NeoLight, which she did not accept.

57. The proposed settlement agreement identified Plaintiff's employer as Defendant NeoLight, LLC.

58. Defendants discriminated and retaliated against Plaintiff first when she was subjected to unfair criticisms for events that occurred when she was on earned sick leave as an accommodation for her cancer disability and side-effects.

59. Defendants discriminated and retaliated against Plaintiff after her spring 2023 reports of compliance violations and when Mr. Kopparthi pressured her in October

2023 to give up her employment and become an independent contractor because the company did not want to be left in "limbo" during her cancer treatments and reasonable accommodations.

60. Defendants discriminated and retaliated against Plaintiff when she was terminated on her first day back to work from leave during her cancer treatment.

61. Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost future earnings and benefits, compensatory damages, anxiety, distress, and physical and emotional distress, as well as harm to her professional reputation, resulting from Defendants' unlawful conduct.

62. Plaintiff will seek to recover reasonable attorneys' fees and costs upon prevailing on her legal claims.

## Claim One

**Violations of Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.***

63. Plaintiff incorporates all prior allegations as though fully set forth herein.

64. Plaintiff is a qualified person who has a disability, as defined by 42 U.S.C. § 12102.

65. Plaintiff was an employee of Defendants, within the definition of 42 U.S.C. § 12111(4).

66. Plaintiff is qualified to perform the job duties for Defendants, with accommodation.

67. Defendants are joint employers covered under the ADA and within the definition of 42 U.S.C. § 12111(5).

68. Plaintiff requested reasonable accommodations of leave and intermittent leave during her treatment, to enable her to perform the essential functions of the job.

69. Defendants unlawfully discriminated and retaliated against Plaintiff for her disability and her request for reasonable accommodations for her disability, in violation of the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12112(b)(5).

70. Defendants violated the ADA when it discriminated against Plaintiff based

7

upon her disability and recent need for accommodation.

71. Defendants discriminated and retaliated against Plaintiff when it pressured her to give up her employment and become an independent contractor instead.

72. Defendants discriminated and retaliated against Plaintiff when she was terminated on her very first day back to work after leave for her disability.

73. Defendants retaliated against Plaintiff after she returned from leave related to her disability to avoid her continued employment and providing her accommodation.

74. Plaintiff has suffered and continues to suffer lost wages and benefits, harm to her professional reputation, expenses, and emotional distress and mental anguish, for which she seeks remedies to be made whole as proved at trial.

75. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief and recovery of attorneys' fees and cost.

### Claim Two

### Violation of Arizona Employment Protection Act

76. Plaintiff incorporates all prior allegations as though fully set forth herein.

77. The Arizona Employment Protection Act ("AEPA") establishes the right to pursue a claim where an employer wrongfully terminates an employee in violation of A.R.S. § 23-1501.

78. The AEPA prohibits an employer from retaliation against an employee for the employee's refusal to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state. A.R.S. § 23-1501(A)(3)(c)(i).

79. The AEPA also prohibits an employer from terminating an employee in retaliation for the employee's disclosure to a manager "that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state . . .." A.R.S. § 23-1501(A)(3)(c)(ii).

80. Plaintiff objected to her direct supervisor regarding product communications and promotions that contained statements that were not supported by documentation.

8

81. Plaintiff reported that the promotional materials would be misrepresentations and violate state and federal laws.

82. After Plaintiff's reports of Defendants' potential violations of law, Mr. Kopparthi altered the conditions of Plaintiff's employment adversely.

83. Plaintiff's reports concerning the lack of supporting documentation for any misrepresentation in the product promotions could constitute violation of Arizona laws, including A.R.S. § 13-2310; § 13-1802(A)(3).

84. Defendants, acting as joint employers, retaliated against Plaintiff shortly after her protected reports, criticizing her and excluding her from key meetings.

85. As a result of Defendants' retaliation against Plaintiff for her protected actions under AEPA, Plaintiff has suffered and continue to suffer damages, including lost income and benefits, lost future wages and benefits, professional harms, and emotional and physical distress.

86. Plaintiff seeks award of her compensatory damages to be proven at trial.

87. Plaintiff seeks recovery of her costs, pursuant to A.R.S. §§ 12-332 and 341.

88. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief and recovery of costs.

**Claim Three**

**Violation of Arizona Paid Sick Leave Act (Fair Wages and Healthy Families Act)**

89. Plaintiff incorporates all prior allegations as though fully set forth herein.

90. The Arizona Paid Sick Leave Act, a part of the Fair Wages and Healthy Families Act, A.R.S. §§ 23-364, 23-373 to 23-374, prohibits retaliation against an employee for exercise of rights to paid sick leave.

91. Arizona law protects employees who request or use paid sick time for a qualifying reason from retaliation or discrimination. A.R.S. § 23-373; A.R.S. §§ 23-364 and 371 to 375.

92. Where unlawful retaliation or discrimination is found, the employer is liable to Plaintiff for the lost wages, "including interest thereon, and an additional amount equal

to twice the underpaid wages or earned paid sick time." A.R.S. § 23-364(G).

93. The anti-retaliation prohibition in A.R.S. § 23-364(G) mandates that the employer found liable "shall" pay to the Plaintiff "not less than one hundred fifty dollars for each day that the violation continued or until legal judgment is final."

94. The statute establishes a rebuttable presumption where an employer has taken adverse action against an employee within ninety (90) days of the employee's exercise of rights under the law. *Id*. § 23-364(B). The presumption requires the employer to prove by "clear and convincing evidence" the legitimate reason for its adverse action. *Id*.

95. In addition to the $150 per day liquidated damage remedy under A.R.S. § 23-364(G), the statute provides for remedies "sufficient to compensate the employee and deter future violations," and treble the lost wages.

96. The allegations set forth above establish that Defendants took adverse action against Plaintiff within 90 days of her exercise of rights to use sick leave, imposing the rebuttable presumption under the statute.

97. Defendants, as Plaintiff's joint employers, unlawfully retaliated and discriminated against Plaintiff for exercise of paid sick leave rights.

98. Plaintiff seeks recovery of compensatory damages, including lost wages, plus double the lost wages, lost benefits, and the liquidated damages under the law.

99. Plaintiff seeks recovery for her garden variety emotional distress and damages to her professional reputation, in addition to award of reasonable attorneys' fees and costs, pursuant to A.R.S. § 23-364(G) and other applicable authorities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Amy L. Stoklas Oakes requests entry of Judgment jointly and severally on each claim in her favor and against each of the Defendants, NeoLight, LLC and TriNet HR III, Inc., awarding her:

    A.    Make whole relief, compensatory damages, emotional distress, for lost wages, benefits, harm to reputation and garden variety emotional distress, in

|     |     |
| --- | --- |
|     | the amounts determined at trial; |
| B.  | Equitable relief including back pay and lost benefits, and front pay, reinstatement, and requiring Defendants to institute policies and undertake training to eradicate unlawful disability discrimination and unlawful retaliation; |
| C.  | Plaintiff's lost wages at treble damages, pursuant to A.R.S. § 23-364(G); |
| D.  | Compensatory damages and lost earnings resulting from Defendants' violations of the Arizona Employment Protection Act and/ or the Arizona paid sick leave laws; |
| E.  | Liquidated damages of $150 per day for Defendants' violation of the Arizona Paid Sick Leave Act (Fair Wages and Healthy Families Act), "for each day that the violation continued or until legal judgment is final," A.R.S. §23-364(G); |
| F.  | Prejudgment and post-judgment interest in the amounts permitted by law; |
| G.  | Attorneys' fees and costs against Defendants, as authorized by Court rules or statutes, including but not limited to 42 U.S.C. §§ 1988, 42 U.S.C. § 12205, and A.R.S. §23-364(G); |
| H.  | Taxable costs as the prevailing party; |
| I.  | Such further relief as this Court deems just and proper. |

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims and issues set forth herein, to the extent permitted by law.

DATED this 16th day of July 2024.

                          YEN PILCH ROBAINA & KRESIN PLC

                          By   /s/ Phil S. Flemming
                                Phil S. Flemming
                                Attorneys for Plaintiff